# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

James P.,[1]

          Plaintiff,

   v.

Frank Bisignano,[2]
*Acting Commissioner of Social Security,*

          Defendant.

Case No. 25-cv-1078 (SGE)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g) Plaintiff James P. ("Mr. P") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Both Mr. P and Defendant have fully briefed their positions, and this matter is now ripe for review. (Dkt. 8; Dkt. 14; Dkt. 15.) For the reasons below, the Court **GRANTS** Mr. P's request for relief, and **DENIES** Defendant's request for relief.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name, only his first name and last initial are provided.

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025, and is substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

**BACKGROUND**

On February 15, 2022, Mr. P applied for disability insurance benefits under Title II of the Social Security Act. (R. 60, 202-08.)[3] Mr. P alleged disability beginning on January 1, 2022. (R. 202.) His claim was denied initially and on reconsideration. (R. 50-71.) Mr. P then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 121-22.)

The ALJ held a hearing on January 9, 2024. (R. 14.) A Vocational Expert ("VE"), Diamond Warren, was present and testified. (R. 43.) Ms. Warren characterized Mr. P's past relevant work as a maintenance electrician under the *Dictionary of Occupations Titles*[4] ("DOT"), 829.261-018, SVP:7,[5] which is typically performed at the medium demand level.

---

[3] The Court refers to the Administrative Record in this Order as "R." followed by the page number located in the lower-right hand corner.

[4] Though not necessary for the Court's decision here, the Court acknowledges that the national workforce's jobs have significantly changed since the last time the DOT was updated in 1991. *See Medved v. Kijakazi*, 855 F. App'x 311 (8th Cir. 2021) (citing *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018)). ALJs, vocational experts, and judges routinely acknowledge variations in jobs that have occurred since the DOT's last update. *See, e.g.*, *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *15 (D.S.D. July 14, 2022) (calling the DOT "a document that egregiously has not been updated since 1991 and is comfortably divorced from reality in 2022"); *Poole v. Kijakazi*, 28 F.4th 792, 795 (7th Cir. 2022) ("[T]he fact that the DOT was last revised before the Internet revolution means that it is a resource that must be used with care. Recognizing that the DOT is increasingly out of step with the modern economy, the [SSA] has been planning for years to replace it ....") (citing *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018)).

[5] The U.S. Department of Labor publishes the DOT to provide "standardized occupational information to support job placement activities." DOT, Introduction, 1991 WL 645964 (4th ed., rev., 1991). The nine-digit number is the occupational code number. DOT, Parts of the Occupational Definition, 1991 WL 645965 (4th ed., rev., 1991). The Specific Vocational Preparation ("SVP") component represents the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702 (4th ed., rev., 1991).

2

(R. 45.) Ms. Warren also classified Mr. P's past work as a bus driver under DOT 913.463-010, SVP: 4, which is generally performed at medium level. (R. 45.)

The ALJ asked a series of hypothetical questions to Ms. Warren. First, the ALJ asked Ms. Warren to assume a person of Mr. P's age, education, and past work, who was limited to "lifting up to 20 pounds occasionally; up to 10 pounds frequently; stand/walk for about 6 hours; can sit for up to 6 hours in an 8-hour work day with normal breaks. . . . [F]requent reaching and overhead reaching, handling, fingering, and feeling."[6] (R. 45-46.) Ms. Warren testified that an individual with the hypothetical limitations could not perform Mr. P's past work in accordance with the DOT definitions because the hypothetical gave "light" instead of "medium" level work. (R 46.) For the second hypothetical question, the ALJ added a "medium exertional level" to the original question, and Ms. Warren testified that a hypothetical individual would not be able to perform work as a maintenance electrician but would be able to perform work as a school bus driver. (R. 46-47.) Lastly, the ALJ asked Ms. Warren whether her answers were consistent with the DOT and Ms. Warren testified that they were. (R. 48.)

After the online, video hearing, on January 9, 2024, the ALJ found Ms. B was not disabled. (R.75-92.) In reaching his decision, the ALJ proceeded through the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520.[7] At step one, the ALJ

---

[6] The hypothetical individual also had climbing, postural, exposure, and other limitations that are not material to the issues on judicial review.

[7] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the

found Mr. P had not engaged in substantial gainful activity during the period between his alleged onset date through his date of last insured. (R. 77-78.) At step two, the ALJ found Plaintiff had the following severe impairments: osteoarthritis of the right knee and obesity. (R. 78.) At step three, the ALJ determined that none of Mr. P's impairments, or any combination of impairments, met or medically equaled the severity of a listed impairment. (R 79-80.) After step three but before proceeding to step four, the ALJ found Mr. P had the residual functional capacity (RFC) to perform:

> medium work as defined in 20 CFR 404.1567(c) subject to the following limitations: lifting no more than fifty pounds occasionally and lifting and carrying up to twenty-five pounds frequently; pushing and/or pulling for control operations limited by the medium exertional level; frequent climbing of ramps or stairs, balancing, stooping, kneeling, and crouching; occasionally climbing ladders, ropes, or scaffolds; occasional crawling; frequent reaching, handling, fingering, and feeling bilaterally; avoid concentrated exposure to extreme cold, wetness, humidity, and vibrations; avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poorly ventilated areas, and cleaning chemicals, such as bleach; and avoid concentrated exposure to operational control of hazardous, moving machinery and unprotected heights.

(R. 80.) At step four, the ALJ found—based on the testimony of the VE who considered Mr. P's RFC—that Mr. P could perform past relevant work as a school bus driver. (R. 85.) The ALJ also noted that the DOT indicates a school bus driver requires constant instead of

---

ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

frequent reaching and handling but that nevertheless, the ALJ accepted the VE's answer that her testimony was consistent with the DOT. (R. 86.)

Though the ALJ could have stopped at step four, he continued to step five and made an alternative finding, relying on the VE testimony, that there were jobs that existed in significant numbers in the national economy that Mr. P could perform. (R. 86-87.) Specifically, the ALJ found that Mr. P could perform the job requirements of hospital cleaner, of which there are 55,000 jobs nationally; order picker, of which there are 10,000 jobs nationally; and counter supply worker, of which there are 35,000 jobs nationally. (R. 87.) Accordingly, the ALJ found Mr. P was not disabled. (R. 87-88.)

Mr. P sought review of the ALJ's decision from the Appeals Council ("AC") on March 12, 2024. (R 199-200.) In seeking review by the AC, Mr. P submitted a vocational report by Karen Starr ("Starr Report"),[8] as well as her curriculum vitae, to rebut Ms. Warren's testimony. (R. 4, 199-201; Dkt. 9-1.) The Starr Report contradicted Ms. Warren's testimony as to each of the jobs Ms. Warren identified that Mr. P could perform. (Dkt. 9-1.) The Starr Report explains that all three jobs identified by Ms. Warren cannot be performed within the definition of medium work because all three "involve little or no tasks performed in a seated position" and medium work "includes approximately [two] hours of seated tasks per work day." (Dkt. 9-1 at 1 (citing 20 C.F.R. § 404.1567(c); SSR 83-10).)

The AC denied Plaintiff's request for review on January 24, 2025. (R. 1.) The AC Notice stated:

---

[8] As discussed more below, the Starr Report was not included in the administrative record.

> This is about your request for review of the Administrative Law Judge's decision dated February 12, 2024. You submitted reasons that you disagree with the decision. We considered the reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision.

(R. 1.) The AC exhibited Mr. P's three-page request for review dated March 12, 2024. (R. 4.) The Notice also stated that the AC will review the case if:

> "[W]e receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

(R. 2.) The AC's denial of review made the ALJ's decision the final decision of the Commissioner. (R. 1-6.) On March 24, 2025, Mr. P filed a Complaint seeking judicial review of the final decision under 42 U.S.C. § 405(g). (Dkt. 1.)

## STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Under this review, the District Court is limited to a determination of "whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting

*Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling[9] ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quotation omitted). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir.2007)).

**ANALYSIS**

Mr. P presents one issue to the Court—that the AC failed to consider rebuttal evidence he submitted with his request for review. (Dkt. 8 at 1; Dkt. 15 at 1.) Mr. P makes two arguments regarding this one issue: (1) that the ALJ erred at step four in finding Mr. P could perform past relevant work, and (2) that the AC failed to consider a rebuttal vocation

---

[9] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (cleaned up).

opinion which calls into question the ALJ's alternative finding at step five. (Dkt. 8 at 4; Dkt. 15 at 1.)

### I.     ALJ Erred by Failing to Resolve Conflict Between VE Testimony and the DOT

The ALJ limited Mr. P to "frequent reaching, handling, fingering, and feeling bilaterally." (R. 80.) However, as the ALJ pointed out in the decision, "the DOT indicates that the job of school bus driver requires constant reaching and handling, rather than frequent." (R.  86.) Mr. P argues that the ALJ failed to follow SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). (Dkt. 8 at 4-5.)[10]

SSR 00-4p explains how an ALJ may use VE testimony. Pursuant to SSR 00-4p, the ALJ must "rely primarily on the DOT ... for information about the requirements of work in the national economy" but may also use evidence from a VE "to resolve complex vocational issues." *Id.* at *2. "When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on" the VE's testimony. *Id.* Part of the ALJ's duty is to "inquire, on the record, as to whether or not there is such consistency." *Id.* If there is a conflict between the VE testimony and the DOT, the ALJ must resolve it by determining whether the VE's explanation "is reasonable and provides a basis for relying on the VE's… testimony rather

---

[10] As Mr. P correctly notes, the SSA rescinded and replaced SSR 00-4p with SSR 24-3p on January 6, 2025. (Dkt. 8 at 4 n.5); *see* SSR 24-3p, 2024 WL 5256890, at *1 (S.S.A. Dec. 6, 2024). Because the ALJ's decision was issued before January 6, 2025, the Court applies SSR 00-4p. *See* SSR 24-3p, 2024 WL 5256890, at *2 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

than on the DOT information." *Id.* "A reasonable explanation includes, for example: (1) when evidence from the VE includes information that is not included in the DOT, such as information from the VE's experience; or (2) when the VE is able to provide more specific information about a job than the DOT, such as how a particular job is performed in a specific setting." *Lori A. H. v. Bisignano*, No. 24-CV-2262 (JMB/JFD), 2025 WL 2374304, at * 5 (D. Minn. July 23, 2025) (citing SSR 00-4p, 2000 WL 1898704, at *2-3), *R&R adopted sub nom. A-H v. Bisignano*, 2025 WL 2374305 (D. Minn. Aug. 15, 2025). The ALJ "will explain" in the decision "how he or she resolved the conflict" between the VE evidence and the DOT.  SSR 00-4p, 2000 WL 1898704, at * 4.

> Here, the ALJ noted in the decision that:
>
> Pursuant to Social Security Ruling 00-4p, the undersigned inquired whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The undersigned notes that the DOT indicates that the job of school bus driver requires constant reaching and handling, rather than frequent. The vocational expert testified that her testimony was indeed consistent with the DOT, as well as with her education and experience in vocational rehabilitation.[11] The vocational expert also testified that the job of school bus driver works within the above-discussed residual functional capacity. The undersigned accepts that testimony.

(R. 86.) However, the ALJ did not comply with SSR 00-4p. When a VE's testimony is not consistent with the DOT, the ALJ has a duty to "inquire on the record" about that inconsistency and is then required to resolve the conflict before relying on the VE's testimony in making the disability determination.  SSR 00-4p, 2000 WL 1898704, at *4. Here, the ALJ did not inquire about the conflict between Ms. Warren's testimony that

---

[11] Ms. Warren did not testify at any point that her answers were based on her education and experience. (R. 12-49.)

the job of bus driver involved "frequent" reaching and handling and the DOT's "constant" reaching and handling definition. (R. 12-49.)  The ALJ merely asked Ms. Warren, at the very end of the hearing, whether her testimony was consistent with the DOT. (R. 48.) If this question were enough to resolve an inconsistency, it would render SSR 00-4p's requirements to inquire about inconsistencies and obtain a reasonable explanation meaningless.[12]

In sum, though the ALJ noted in the decision that there was a conflict, the ALJ failed to inquire about that conflict on the record and elicit a reasonable explanation as required by SSR 00-4p. Because Ms. Warren's testimony was not consistent with the DOT, and the ALJ failed to inquire about and resolve the conflict, he cannot rely on Ms. Warren's testimony in the disability determination. *Lori A. H.,* 2025 WL 2374304, at * 6 ("When a VE's testimony is not consistent with the DOT, the ALJ must resolve the conflict before he can rely on the testimony in the disability determination.") (citing SSR 00-4p, 2000 WL 1898704, at * 4). And without Ms. Warren's testimony, "the DOT definition is the default." *Id.* (citing SSR 00-4p, 2000 WL 1898704, at *2.) The DOT definition for bus driver requires "constant" reaching and handling which exceeds the "frequent" reaching and handling the ALJ limited Mr. P to. *See* DICOT 913.463-010, 1991 WL 687823. Consequently, the Court recommends that the Commissioner's final decision be reversed, and the matter remanded because the ALJ did not identify, inquire, obtain an explanation,

---

[12] Mr. P states that the "ALJ made the required inquiry whether the VE's testimony was consistent with the DOT." (Dkt. 8 at 5.) For the reasons explained above, the Court disagrees.

or resolve the conflict between the Ms. Warren's testimony and the DOT regarding reaching and handling.

## II.     Appeals Council Erred When It Omitted the Starr Report

Mr. P argues that because the ALJ erred at step four, the ALJ's alternative finding at step five is critical. (Dkt. 8 at 5.) Mr. P argues that the AC erred in failing to consider the additional evidence he submitted to the AC to rebut the ALJ's step five analysis, namely, the Starr Report.

If a claimant is dissatisfied with an ALJ's decision, the claimant may request review by the AC. *See* 20 C.F.R. § 404.967. The AC must review a case where it receives additional evidence that is: "(1) new; (2) material; (3) relates to the period on or before the date of the ALJ's hearing decision; and (4) presents a reasonable probability that the outcome of the decision would change." *Thor S. v. Berryhill*, No. 18-CV-538 (NEB/KMM), 2018 WL 7141873, at *5 (D. Minn. Dec. 13, 2018) (citing 20 C.F.R. § 404.970(a)(5)), *R&R adopted*, 2019 WL 368459 (D. Minn. Jan. 30, 2019); *Angela R. M. v. Colvin*, No. 23-CV-03033 (JMB/JFD), 2025 WL 554020 (D. Minn. Jan. 22, 2025), *R&R adopted sub nom. Angela R. M. v. King*, 2025 WL 553616, at * 3 (D. Minn. Feb. 19, 2025) (citing *Thor S.*, 2018 WL 7141873, at * 5). "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) (quoting *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000)). Additional evidence is material if it is "relevant to claimant's condition for the time for which benefits were denied," and not merely detailing

11

"after-acquired conditions or post-decision deterioration of a pre-existing condition." *Bergmann*, 207 F.3d at 1069-70.

"When the [AC]  has considered material new evidence and nonetheless declined review," the court's "task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the [AC] that was not before the ALJ." *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). However, if it is unclear whether the AC considered additional evidence submitted a court may remand the case.  *See Lamp v. Astrue*, 531 F.3d 629, 632-33 (8th Cir. 2008) (determining that it was unclear from the record whether the AC reviewed new evidence and remanding); *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000) (explaining that the court could not discern whether the AC considered the additional evidence and remanding); *Craig M. v. Berryhill*, No. 18-CV-908 (NEB/DTS), 2019 WL 2648029, at * 3 (D. Minn. June 10, 2019) ("When the Appeals Council denies review without substantively considering newly submitted evidence, the reviewing court may remand the case. . . .") (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)), *R&R adopted*, 2019 WL 2644199 (D. Minn. June 26, 2019); *B.L.B. v. Kijakazi*, No. 4:21-CV-04222 (VLD), 2022 WL 14812595, at * 27-28 (D.S.D. Oct. 26, 2022) (finding AC erred when it failed to address additional evidence in its decision letter and remanding for evaluation); *Torrey v. Astrue*, No. 4:10-CV-2271 (LMB), 2012 WL 886828, at * 17-18 (E.D. Mo. Mar. 15, 2012) (remanding because court could not determine whether AC considered additional evidence where the AC's notice did not refer to the new evidence); *but see Thor S.*, 2018 WL 7141873, at * 6 (noting that "it is somewhat unclear whether the

12

[AC] considered the new material, in denying review" and concluding there was no error because the additional evidence "did not create a reasonable probability that the outcome of the ALJ's decision would have been different.")

Here, Mr. P submitted the Starr Report dated March 4, 2024, to the AC. (R. 200; Dkt. 9-1.) The Starr Report is clearly new and material—it was written after the hearing, is not cumulative of other evidence in the record, is relevant to Mr. P's abilities for the time at which benefits were denied, and does not merely detail a change in post-decision conditions. *See Lamp*, 531 F.3d at 632; *Bergmann*, 207 F.3d at 1069; 20 C.F.R. § 404.970(a)(5). And the Starr Report presents a reasonable probability that the outcome of the decision would change. The ALJ relied exclusively on Ms. Warren's testimony regarding the jobs Mr. P could perform (R. 87), and the Starr Report directly contradicts Ms. Warren's testimony, suggesting that none of the jobs Ms. Warren identified would actually be plausible for Mr. P.[13] *See Duran v. O'Malley*, 754 F. Supp. 3d 251, 263-64 (D. Mass. 2024) (finding similar vocational expert report submitted as additional evidence showed reasonable probability of changed outcome). Thus, the AC was required to review

---

[13] Defendant argues that the ALJ's decision at step five is supported by substantial evidence and that the Starr Report does not call into question the ALJ's step five finding. (Dkt. 14 at 6-7.) Mr. P argues the Starr Report undermines the ALJ's step five analysis because the ALJ's RFC limited him to medium work and the jobs identified by Ms. Warren cannot be performed under the definition of medium work. (Dkt. 8 at 9-10; Dkt. 15 at 2-4.) As discussed more below, the Court need not determine whether the ALJ's step five analysis was supported by substantial evidence, rather at this juncture the Court determines that the Starr Report presents a reasonable probability of a different outcome at step five.

the Starr Report submitted as additional evidence. 20 C.F.R. § 404.970(a)(5); *Thor S.,* 2018 WL 7141873, at *5 (citing 20 C.F.R. § 404.970(a)(5)).

The Court cannot, however, determine if the AC reviewed the Starr Report.[14] Mr. P's Request for Review to the AC references an "attached brief and vocational report." (R. 200.) The AC Notice denying review stated:

> This is about your request for review of the Administrative Law Judge's decision dated February 12, 2024. You submitted reasons that you disagree with the decision. We considered the reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision.

(R. 1.) The AC exhibited Mr. P's three-page request for review dated March 12, 2024. (R. 4.) The Starr Report is also three pages long. (Dkt. 9-1 at 1-3.) Though the AC Notice states that it considered the reasons submitted in request for review, it is unclear whether the AC considered the Starr Report. If it had, the Court suspects the AC would have exhibited the Starr Report in its Notice, not just the request for review, and the report would have been included as part of the Administrative Record. Regardless, the Court need not speculate as to whether the AC actually considered the Starr Report because remand is warranted where it is unclear the AC considered the evidence. *See Lamp*, 531 F.3d at 632-33; *Gartman*, 220 F.3d at 922; *Craig M.,* 2019 WL 2648029, at * 3 (citing *Nelson*, 966 F.2d at 366); *Torrey*, 2012 WL 886828, at * 18. Because the AC was required to review the Starr Report and the

---

[14] Both parties' arguments rely on the substantial evidence standard of review. (Dkt. 8 at 6-7; Dkt. 14 at 4.) This would be the correct standard had the AC "considered material new evidence." *Mackey*, 47 F.3d at 953. Because the Court cannot determine if the AC considered the additional evidence submitted here, the Court does not review the final decision under the substantial evidence standard. *See Lamp*, 531 F.3d at 632-33.

14

Court cannot determine whether the AC did so, the action must be reversed and remanded to the ALJ.

### III. Conclusion

In sum, the ALJ erred by failing to comply with SSR 00-4p, and the AC erred by not addressing additional evidence submitted. Accordingly, the Court remands the matter to the ALJ for further proceedings. On remand the ALJ should reconsider its previous decision in light of the Starr Report and reassess Mr. P's ability to perform his past relevant work at step four pursuant to SSR 00-4p.

### ORDER

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's request for relief (Dkt. 8) is **GRANTED**.

2. Defendant's request for relief (Dkt. 14) is **DENIED**.

3. This case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this **ORDER**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: February 26, 2026                          *s/Shannon G. Elkins*
                                                 SHANNON G. ELKINS
                                                 United States Magistrate Judge

15